IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN, | No. 2:12-CV-0391-CMK-P |
| Petitioner, | |
| vs. | ORDER |
| P.D. BRAZELTON, | |
| Respondent. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1) and supplemental briefing (Docs. 28 and 29), respondent's answer (Doc. 13) and supplemental answer (Doc. 32), and petitioner's reply (Doc. 17) and supplemental reply (Doc. 34). Also before the court is petitioner's motion for discovery (Doc. 33).

///

///

///

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> About noon on June 6, 2007, Adrien Abeyta and his girlfriend Mia Zapata heard loud banging on the front door of Abeyta's home. Abeyta opened the door and defendant, armed with a firearm, began to force his way into the home. Abeyta struggled with defendant onto the front porch and yelled for Zapata to get a gun. Defendant pistol-whipped Abeyta in the head. Zapata got a handgun and attempted to fire a shot at defendant but the gun jammed. Defendant then shot Zapata several times. One bullet grazed Abeyta's head.

B. **Procedural History**

Petitioner entered a plea of no context to attempted first degree robbery as to Abeyta and assault with a firearm as to Zapata. Petitioner admitted that he personally used a firearm and that he inflicted great bodily injury. Following denial of petitioner's motion to withdraw his plea, petitioner was sentenced to an aggregate state prison term of 21 years. The judgment was affirmed on direct appeal and petitioner did not seek direct review by the California Supreme Court. Petitioner then filed a series of post-conviction actions, all of which were denied.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040,

1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether

the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

In this case, petitioner raises the following claims:

| | | |
|---|---|---|
| Claim 1 | | The prosecutor knowingly elicited false testimony at his preliminary hearing. |
| Claim 2 | | Ineffective assistance of counsel for failing to impeach Zapata at the preliminary hearing. |
| Claim 3 | | Ineffective assistance of counsel for failing to file a motion to withdraw his plea. |
| Claim 4 | | Ineffective assistance of counsel at the hearing on petitioner's motion to withdraw his plea. |
| Claim 5 | | The trial court "forced" petitioner to proceed without counsel at the hearing on his motion to withdraw his plea. |
| Claim 6 | | The trial court erred in failing to order substitution of counsel. |
| Claim 7 | | The trial court erred by failing to advise petitioner of the parole consequences of his plea. |
| Claim 8 | | The trial court erred by failing to advise him of his rights to a jury trial, to confront witnesses, and against self-incrimination. |
| Claim 9 | | A monetary fine was improperly imposed. |
| Claim 10 | | The plea is invalid because petitioner was incompetent. |
| Claim 11 | | Ineffective assistance of counsel for failing to investigate petitioner's competency. |
| Claim 12 | | Ineffective assistance of appellate counsel. |

At the outset, the court agrees with respondent that some of petitioner's claims are barred because he entered a plea of no contest in the state court. A guilty plea – or plea of no contest – which is knowingly, intelligently, and voluntarily made, bars any right to later assert claims based on constitutional deprivations allegedly occurring prior to the guilty plea. See Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975) (citing Brady v. United States, 397 U.S. 742

6

1  (1970); McMann v. Richardson, 397 U.S. 759 (1970); and Parker v. North Carolina, 397 U.S.
2  790 (1970)).  Thus, where the defendant pleads guilty, he may only challenge whether the guilty
3  plea was valid (i.e., knowing, intelligent, and voluntary).  See Tollett v. Henderson, 411 U.S.
4  258, 267 (1973); see also Mitchell v. Superior Court for Santa Clara County, 632 F.2d 767, 769-
5  70 (9th Cir. 1980).  This rule is known as the "Tollett rule."

6  An exception to this rule may exist where state law permits a challenge to an
7  adverse pre-trial ruling despite a later guilty plea.  See Lefkowitz, 420 U.S. at 288 (citing
8  McMann, 397 U.S. at 766).   This is called the "Lefkowitz exception."  In California, a defendant
9  may raise an issue on appeal despite a guilty plea if the defendant has filed a written statement
10 with the trial court setting forth the grounds for the claim and the trial court has issued a
11 certificate of probable cause for the appeal.  See Mitchell, 632 F.2d at 771 (citing Cal. Penal
12 Code § 1237.5).  This rule, however, does not operate as an exception to the Tollett rule.  See
13 Mitchell, 632 F.2d at 772.  The only Lefkowitz exception under California law is a statute
14 permitting an appeal based on an alleged Fourth Amendment violation.  See id. at 771; see also
15 Cal. Penal Code § 1538.5.  A conditional guilty plea does not fall under the Lefkowitz exception.
16 See Mitchell, 632 F.2d at 773.  Another exception to the Tollett rule exists where the challenge
17 goes to "the power of the state to bring the defendant into court to answer the charges brought
18 against him."  Journigan v. Duffy, 552 F.2d 283,  (9th Cir. 1977) (citing Blackledge v. Perry, 417
19 U.S. 21, 30 (1974)).  This is known as the "Journigan exception."

20 Thus, under the Tollett rule, a defendant who pleaded guilty or no contest may
21 only raise claims on federal habeas which challenge the validity of the plea or fall within either
22 the Lefkowitz or Journigan exceptions.  Claims of ineffective assistance of counsel with respect
23 to the plea are permitted under the Tollett rule.  See Tollett, 411 U.S. at 267 (citing McMann,
24 397 U.S. at 771).
25 / / /
26 / / /

1      Of the 12 claims petitioner raises, Claims 1, 2, and 9 do not relate to the validity of petitioner's plea.  Consequently, these claims are barred and petitioner's motion for additional discovery regarding Claims 1 and 2 is moot.

       The court also agrees with respondent that other claims are barred based on state court procedural defaults.  Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  However, a discretionary state rule is not adequate to bar federal habeas corpus review.  See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994).  Generally, the only state law grounds meeting these requirements are state procedural rules.  Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

       A state law is independent if it is not interwoven with federal law.  See Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  The independence of a state law is measured at the time the default is imposed by the state court to bar a claim.  See Bennett v. Mueller, 322 F.3d 573, 582 (9th Cir. 2003); see also La Crosse v. Kernan, 244 F.3d 702, 204 (9th Cir. 2001); Park v. California, 202 F.3d 1146 (9th Cir. 2000) (assessing whether California's waiver default was independent when the California Supreme Court denied the claim).  A state law is adequate if it is clear, well-established, and consistently applied.  See Bargas v. Burns, 179 F.3d 1207, 1211 (9th Cir. 1999).  The adequacy of a state default is measured at the time of the petitioner's purported default.  See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997).  Thus, the respective dates for determining the adequacy and independence may not be the same.

///

The government bears the ultimate burden of establishing adequacy. See Bennett, 322 F.3d at 581. However, because the petitioner bears the initial burden of putting a procedural bar affirmative defense in issue in the case (by asserting specific factual allegations as to inadequacy, for example), the scope of the state's burden of proof is measured by the specific assertions put forth by petitioner. See id. at 586. The petitioner's burden is de minimus. See King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006); see also See Webb v. Kernan, 2008 WL 564965 (E.D. Cal. 2008).

When the state court discusses a procedural default but also reaches the merits of a claim, a denial of the claim cannot be said to have relied on the procedural default. See Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001) (citing Harris, 489 U.S. at 263); see also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993). As the Ninth Circuit observed in Panther, ". . . because the Alaska Court of Appeals considered Panther's claim on the merits . . . so can we." 991 F.2d at 580. In Thomas, the state court discussed the issue of procedural default but then went on to deny the claim because any error was harmless. See 273 F.3d at 1176. The Ninth Circuit held: "In doing so, the [state] court left the resolution of the procedural default issue uncertain rather than making a clear and express statement that its decision was based on a procedural default." Id. Therefore, where the state court discusses both procedural default and the merits, and does not expressly hold that the procedural default is the basis of the denial, the procedural default does not operate to bar federal review.

Of the remaining 9 claims, Claims 5, 6, and 7 were denied in the state court exclusively based on petitioner's procedural default. Specifically, these claims were denied pursuant to In re Dixon, 41 Cal.2d 756 (1953), because they could have been raised on direct appeal. Under California law, a convicted defendant desiring to bring claims in a state habeas petition must, if possible, have pursued the claims on direct appeal. See Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing In re Dixon). The so-called Dixon rule requiring that claims be raised on direct appeal is discretionary in that it admits of the possibility of exceptions

for "special circumstances constituting an excuse" for failure to raise a claim by way of direct appeal and when such circumstances are found, the California Supreme Court may entertain the claim.  see Park, 202 F.3d at 1152 (citing Fields v. Calderon, 125 F.3d 757, 763(9th Cir. 1997)); see also Karis v. Vasquez, 828 F. Supp. 1449, 1462-63 (1993).  One of the exceptions to the Dixon rule is for fundamental constitutional error.  See Park, 202 F.3d at 1152 (citing In re Harris, 5 Cal. 4th 813 (1993)).

Before the California Supreme Court decided In re Robbins, 18 Cal.4th 770 (1998), attempting to disentangle certain of California's procedural rules from federal constitutional concepts, the applicability of this exception depended, at least in part, on federal constitutional principles.  See Park, 202 F.3d at 1152.  Therefore, Dixon defaults imposed before 1998 are not independent of federal law and cannot bar federal habeas review.  See id. at 1153. As to adequacy, the Ninth Circuit has held that the Dixon bar was not firmly established and consistently applied prior to the Clark decision in 1993.  See Fields, 125 F.3d at 765.

Because the Dixon defaults as to Claims 5, 6, and 7 were imposed after 1998, they are adequate and independent to bar federal review of those claims.

The remaining claims (Claims 3, 4, 8, 10, 11, and 12) are discussed below.

**A.    Claims 3 and 4**

In Claims 3 and 4, petitioner argues that counsel was ineffective with respect to withdrawal of his no contest plea.  The state court addressed these claims as follows:

> Petitioner also claims that trial counsel failed to move to withdraw Petitioner's change of plea on the grounds he misunderstood the enhancement, that he deceived the court by falsely pleading no contest to the attempted robbery, and that he was not guilty of the attempted robbery. In a related claim, Petitioner argues that counsel's conduct at the hearing resulted in a *Marsden* motion instead of a motion to withdraw the plea. First, the trial court treated the hearing as an oral motion to withdraw the plea.  Second, the trial court considered Petitioner's claim that there was not sufficient evidence of the attempted robbery and that Petitioner made a mistake by pleading no contest.  Finally, Petitioner claims that he believed that the gun use enhancement applied to Zapata and not Abeyta and that if he had known that the enhancement attached to the attempted robbery on Abeyta, he would not have pled no contest.  Petitioner was repeatedly

informed prior to the change of plea that the gun use enhancement was in relation to the attempted robbery. The robbery charge originally identified both Abeyta and Zapata as the victims. However, Zapata was deleted at the time of the change of plea. When Petitioner changed his plea, the trial court clearly identified the counts, victims, and allegations. Moreover, given Petitioner's potential exposure to life imprisonment if he were convicted following trial and the negotiated plea resulting in an aggregate sentence of 21 years imprisonment, Petitioner's allegation that he would not have accepted the plea if he had been properly informed of the components of the sentence is not credible. Had counsel sought to withdraw the plea on this basis, it is not reasonably likely that the motion would have been granted. Therefore, Petitioner has not shown that counsel's failure resulted in prejudice to Petitioner's case.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Based on the facts recited by the state court – which petitioner has not rebutted – the court agrees with respondent that the denial of Claims 3 and 4 was neither contrary to nor based on an unreasonable application of these clearly established principles.  As the state court observed, Claim 3 – that counsel was ineffective for failing to file a motion to withdraw his pea – is without merit because the record reflects that the trial court considered an oral motion to withdraw the plea.  Thus, petitioner has not shown prejudice.  Similarly, Claim 4 – that counsel's conduct at the hearing resulted in the court not considering his request to withdraw his plea  – lacks merit because record reflects that the trial court considered all of petitioner's arguments in favor of withdrawing his no contest plea.  Again, petitioner has not demonstrated prejudice.

**B.     Claim 8**

Petitioner argues that the trial court's colloquy at the time petitioner pleaded no contest  was insufficient because he was not informed of his rights to a jury trial, to confront witnesses, and against self-incrimination.  The state court addressed this claim on the merits as follows:

> The record reflects that Petitioner was informed that he had the right to a trial, the right to call witnesses, and the right not to incriminate himself.  He agreed that he understood that he was giving up these rights by accepting the plea bargain. (April 13, 2009, Change of Plea transcript at pp. 4-5).  He expressly waived his right to a public jury trial, the right to see, hear, and cross-examine witnesses against him, and the right not to incriminate himself.  (*Id.* at pp. 7-8).  Therefore, Petitioner's argument that the record was "silent" on his . . . rights is contradicted by the record.

A review of the referenced transcript confirms the state court's analysis, with which this court agrees.  There is simply no factual basis for petitioner's argument in Claim 8.  The state court's denial of this claim was neither contrary to nor based on an unreasonable application of the law.

/ / /

**C.     Claims 10 and 11**

These claims relate to petitioner's competence to enter a no contest pea. Claims 10 and 11 were addressed by the state court as follows:

> Petitioner claims that he was not mentally competent to change his plea and that trial counsel was ineffective for failing to investigate Petitioner's mental state. However, there is no evidence to support these allegations. Petitioner states that he had a history of mental illness and substance abuse and that he had been prescribed psychiatric medication in the past. He does not allege that he was suffering from any mental illness or that he was under the influence of medication *at the time of the change of plea*. In fact, Petitioner denied being under the influence of alcohol, drugs, or medication that would cause him difficulty understanding the proceedings. (April 13, 2009, Change of Plea at p. 8). He further denied being on any medication for illness that would affect his ability to understand the proceedings. (*Id.* at p. 9). The documents attached to the petition show that Petitioner was treated for mental illness in 2002 and has recently been receiving mental health care in prison. The 2002 records are not relevant to Petitioner's mental state in 2009 and the prison health records indicate that, although Petitioner has been diagnosed with mood disorder, he has not been prescribed psychiatric medication. Furthermore, on November 19, 2009, Petitioner stated to a psychiatrist that he had a lot of psychiatric problems in the past but "none now." Consequently, the psychiatrist concluded that there was no evidence of a major mental disorder, but only a possible history of mood disorder. Therefore, Petitioner has failed to show that he was not competent to change his plea or that counsel had any reason to investigate Petitioner's competence.

The court finds that the state court's denial of Claims 10 and 11 was neither contrary to nor based on an unreasonable application of the law. A plea agreement is valid if it is entered into knowingly and voluntarily. See United States v. Kaczynski, 239 F.3d 1108 (9th Cir. 2001). Therefore, a defendant has a due process right not to enter an agreed plea while incompetent. Cf Drope v. Missouri, 420 U.S. 162 (1975) (discussing right not to stand trial while incompetent). Based on the facts recited by the state court, the court agrees with the state court's conclusion that there is no evidence that petitioner was incompetent at the time he entered the no contest plea.

///

///

///

Notably, petitioner attaches to his petition a copy of the transcript of the May 2009 hearing at which petitioner sought to withdraw his no contest plea in which his trial counsel expressed his belief that petitioner was in fact competent. Counsel told the court:

> Mr. Witkin throughout his case requested that I 1368 him. I told him that I could not do that unless I honestly believed that he was incompetent. His response to me was, I have to get the one ethical attorney. Any other attorney would do this for me.
>
> And I said, If at any point during these proceedings I feel that you are incompetent, I will make that motion. But I cannot make it just because you ask me. And I said, When we have these meetings, these two-hour meetings, in which we're discussing the law, and you're clearly understanding it, and you're bringing cases to me, how can I possibly say to a Court that I believe you're incompetent?
>
> I do believe that he probably has, as many of our clients do, that there are probably some mental issues. Be he shown – he had shown me nothing that would lead me to believe that he was incompetent. And so I know that he was distressed with the fact that I would not declare him 1368. He asked me to do it in order to delay the proceedings, to give him additional time to think about what he wanted to do. I told him I could not do that.

Trial counsel's assessment that his client is competent is significant. See Hernandez v. Ylst, 930 F.2d 714 (9th Cir. 1991); United States v. Clark, 617 F.2d 180 (9th Cir. 1980); see also Drope, 420 U.S. at 176-77.

Because the record fails to show that petitioner was incompetent at any time, neither Claim 10 – that his plea was invalid because he was incompetent – nor Claim 11 – that trial counsel was ineffective for failing to investigate his competence – has merit.

**D.     Claim 12**

In this claim petitioner argues that appellate counsel was ineffective because claims either were not raised or were raised ineptly. The Strickland standards also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

14

decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") Further, there is, of course, no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88. Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. See id. at n.9.

In this case, petitioner has not identified any non-frivolous arguments appellate counsel should have raised that would have produced a different result if they had been raised. Further, petitioner has not demonstrated how the claims which were raised on appeal were done so ineptly.

### IV.  CONCLUSION

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability. Before petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Where the petition is denied on the merits, a certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See Fed. R. App. P. 22(b). Where the petition is dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).  For the reasons set forth above, the court finds that issuance of a certificate of appealability is not warranted in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 1) is denied;

2. The court declines to issue a certificate of appealability;

3. Petitioner motion for discovery (Doc. 33) regarding Claims 1 and 2 is denied as moot; and

4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 30, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE